UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SAMUEL EUGENE CALHOUN,

              Plaintiff,

                           Case No. 1:23-cv-459

v.

                           Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

              Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Burt, Steward, Brazee, Dixion-Ingalls, Hardiman, Barnes, and Mercer. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Scanlon, Brown, and Delo: (1) Plaintiff's claims for conspiracy to violate the First Amendment, (Compl., ECF No. 1, PageID.33 ¶ 115, PageID39–40 ¶ 142); (2) Plaintiff's First Amendment claim for denial of access to the courts, (*id*., PageID.35 ¶ 125); (3) Plaintiff's First Amendment retaliation claim against Defendant

Brown, (*id.*, PageID.38 ¶ 137); (4) Plaintiff's Sixth Amendment claim, (*id.*, PageID.40 ¶ 145); and (5) Plaintiff's Fourteenth Amendment due process claims, (*id.*, PageID.41–42 ¶¶ 150–152).

The following claims against Defendants Scanlon, Brown, and Delo remain in the case: (1) Plaintiff's claims for violations of his First Amendment right to receive regular mail, (*id.*, PageID.33 ¶ 117, PageID.36 ¶ 129–130); and (2) Plaintiff's claims for violations of his First Amendment right to be present when his legal mail is opened for inspection, (*id.*, PageID.33 ¶ 116, PageID.37 ¶ 131).

<u>Discussion</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following MCF personnel: Warden Sherry L. Burt; Deputy Wardens Darrell A. Steward and David Brazee; Facility Business Manager Bobi Dixion-Ingalls; Mailroom Clerks Gail Scanlon and Karen Brown; Administrative General Assistant J. Delo; Grievance Coordinator Loretta Barnes; Librarian Elisa Hardiman; and Librarian Technician Paulette Mercer.

Plaintiff's allegations span forty-four pages; he also attaches sixty-six pages as exhibits. Plaintiff's claims can be broken down into two categories: claims against the first nine Defendants listed above arising out of their role in interfering with Plaintiff's legal and regular mail, (Compl., ECF No. 1, ¶¶ 1–99, 113–120, 125–155); and claims against the first three and the last two listed Defendants related to their interference with Plaintiff's access to the courts due to inadequacies in the law library, (*id.*, ¶¶ 100–112, 121–124).

2

### A.   MDOC Prisoner Mail Policy Directive 05.03.118 (eff. Mar. 1, 2018)[1]

### 1.   Regular Mail

The MDOC's prisoner mail policy acknowledges that prisoners are "permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603." (Mail Policy, ECF No. 1, PageID.71 ¶ D.) Nonetheless, a significant goal of the policy directive is to prevent contraband from entering the prison. To achieve that goal, incoming mail is subject to search.

The prisoner mail policy directive identifies several categories of prohibited incoming mail. (*Id.*, PageID.76–79 ¶¶ LL–RR.) The categories include "mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." (*Id.*, PageID.76 ¶ NN.) With one exception, all incoming mail is "opened in one location and inspected . . . to determine if it contains money, controlled substances, or other physical contraband." (*Id.*, PageID.75 ¶ DD.) Physical contraband is confiscated prior to delivery of the mail. (*Id.*) The policy directive requires that the written

---

[1] The current version of the policy became effective November 6, 2023. The policy directive that governed matters at the time of the incidents alleged in the complaint became effective March 1, 2018. Plaintiff has attached a copy of the policy directive to his complaint. (Mail Policy, ECF No. 1, PageID.71–85.) All references to the prisoner mail policy herein are to the policy directive attached to Plaintiff's complaint.

The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)).

content be "skimmed, and if it appears from skimming the content that the mail may violate this policy, the item shall be read to determine if it is allowed." (*Id.*)

If incoming mail is believed to be in violation of policy, the policy directive requires a "Notice of Package/Mail Rejection" be completed and sent to the prisoner. (*Id.*, PageID.79 ¶ VV.) The notice must identify the specific item that purportedly violates the policy directive and the reason that the item violates the policy directive. (*Id.*) The propriety of the rejection—and the appropriate disposition, if the rejection is upheld—is resolved at a hearing conducted pursuant to Administrative Rule 791.3310 by a person other than the person who issued the notice. (*Id.*, ¶ WW.) The Administrative Rule requires written notice of the purpose of the hearing, the prisoner being provided with the opportunity to be heard, and a summary report of the result from the hearings officer. Mich. Admin. Code R. 791.3310.

If the hearings officer concludes that a newspaper, magazine, book, or other publication violates the policy based on its written or pictorial content, the publication must be submitted to the warden. (Mail Policy, PageID.80 ¶ AAA.) If the warden does not agree with the hearings officer, the publication must be delivered to the prisoner. (*Id.*) If the hearings officer finds that the mail violates the policy, the officer must determine how to dispose of the rejected mail. (*Id.*, ¶ ZZ.) The hearings officer's report is not the end. The mail policy permits an appeal through the administrative grievance process. (*Id.*, ¶¶ EEE–FFF.)

Plaintiff identifies several instances where Defendants Brown and Scanlon censored his mail, rejecting content that Defendants claimed violated the policy directive. First, Plaintiff alleges that, on August 20, 2020, Defendant Brown rejected four pages from his Lansing Star Journal because they included an article pertaining to an MDOC prisoner in the Upper Peninsula of Michigan. (Compl., ECF No. 1, PageID.22–23 ¶ 84.) Plaintiff includes a copy of the Notice of

4

Package/Mail Rejection form, (Attach., ECF No. 1, PageID.59); nonetheless, he claims he did not receive notice of the rejection and that he was not afforded an opportunity to be heard. (Compl., ECF No. 1, PageID.23 ¶ 86.)

Next, Plaintiff claims that, on August 25, 2020, Defendant Brown rejected two pages from another Lansing Star Journal article because it "discuss[ed] the current global coronavirus and an MDOC prisoner." (*Id.*, PageID.23 ¶ 85.) Plaintiff claims that he did not receive notice of the rejection and that he was not afforded an opportunity to be heard. (*Id.* ¶ 86.)

Plaintiff claims that none of his newspapers were censored until after August 7, 2020, the date Plaintiff filed an administrative grievance against Defendant Burt "criticizing her botched handling of the COVID outbreak at the facility . . . ." (*Id.*, PageID.24 ¶ 88.) Plaintiff claims that Defendant Brown's censorship of the newspapers was in retaliation for Plaintiff's filing of the grievance against Burt. Plaintiff claims further that Brown and Burt conspired to retaliate by way of mail censorship.

Plaintiff contends that Defendants Brown and Scanlon took the retaliation one step further when, on December 29, 2021, they censored mail to Plaintiff from Intelligent Solutions Advisory "by removing several pages of a forensic DNA report that was created by the advisory group at Plaintiff's request . . . ." (*Id.*, PageID.25 ¶ 91.)[2] Plaintiff alleges that Defendants Brown and Scanlon again failed to provide the requisite notice so that Plaintiff was never afforded a hearing regarding the censorship. Plaintiff reordered the report. Plaintiff contends that Brown and Scanlon entirely failed to provide the second report without providing notice or an opportunity to be heard. (*Id.* PageID.28 ¶ 99.)

---

[2] The Court accepts Plaintiff's allegations as true for purposes of this preliminary review. Nonetheless, it does not appear that Intelligent Solutions Advisory is a laboratory; rather, it is—or perhaps was—a book vendor through the website www.toolsforfreedomstore.com.

Plaintiff claims that Brown and Scanlon violated Plaintiff's First Amendment right to free speech by failing to allow Plaintiff to receive the Lansing Star Journal articles and the DNA report. Plaintiff contends that Defendants Brown and Scanlon, in conspiracy with Defendant Burt, violated Plaintiff's right to be free of retaliatory adverse action in response to Plaintiff's participation in conduct protected by the First Amendment. Plaintiff contends further that Defendants Brown and Scanlon interfered with Plaintiff's First Amendment right to access the courts by denying Plaintiff access to the missing pages in the DNA report. Plaintiff also contends that Defendants Brown and Scanlon violated Plaintiff's Fourteenth Amendment right to due process by failing to follow the policy directive's notice requirements for the rejection of mail.

Plaintiff contends that Defendants Burt, Brazee, and Steward are responsible for Defendant Brown's and Defendant Scanlon's interference with Plaintiff's incoming mail by knowingly acquiescing to that interference and by failing to properly train their employees. (*Id*., PageID.33–34 ¶¶ 118, 119.)[3] Similarly, Plaintiff claims that Defendant Washington is liable for the interferences with Plaintiff's incoming mail because she implicitly approved the interference by failing to rectify it after Plaintiff complained about it. (*Id*., PageID.34 ¶ 120, PageID.41 ¶ 147.)

Plaintiff contends that Defendants Burt, Brazee, and Steward retaliated against Plaintiff, in conspiracy with Defendant Barnes, by rejecting (and/or denying) Plaintiff's grievances regarding the violations alleged above. (*Id*., PageID.38 ¶¶ 136–139.)

---

[3] It may be that Plaintiff would also include Defendant Dixion-Ingalls in this group. (Compl., ECF No. 1, PageID.37, ¶ 132.) It appears most likely that paragraph 132 is meant to reference only interference with legal mail. (*See id*. ¶ 131.) Nonetheless, the Court's analysis of the allegation with regard to Defendants Burt, Brazee, and Steward would apply to Defendant Dixion-Ingalls as well.

### 2.      Legal Mail

The one exception to the general practice of opening and searching all mail in one location exists for "mail requiring special handling." (Mail Policy, ECF No. 1, PageID.75.) The most significant category of mail requiring special handling is "legal mail." (*Id*.)

The Sixth Circuit Court of Appeals, when considering the MDOC's mail policies, defined legal mail "to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials, via the U.S. Postal Service or alternative private courier services, and hand delivery." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). The MDOC has, over the years, modified its definition of incoming legal mail to include the following:

> Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above.

(Mail Policy, ECF No. 1, PageID.75 ¶ FF.) In some respects the MDOC definition is broader than the Sixth Circuit's definition. The fact that incoming mail falls within the ¶ FF definition does not, standing alone, require special handling. Special handling is only required if the prisoner requests in writing that his incoming legal mail receive special handling. (*Id*. ¶ GG.) Plaintiff has provided a copy of his written request. (Attach., ECF No. 1, PageID.47.)

The policy directive sets forth the following process for inspecting mail requiring special handling:

> II.      If it appears upon receipt that mail requiring special handling may have been mailed from someone other than the identified sender, mailroom staff shall confirm the mailing with the identified sender at a verified telephone number (e.g., Michigan Bar Journal). If confirmed, the mail shall then be processed with special handling. If the identified sender did not send the mail, an e-mail shall be sent to the identified sender confirming this information. A copy of the e-mail shall be retained with the log identified in Paragraph KK. In such cases, the mail will be process in accordance with his policy but will not receive special handling.

JJ.     Incoming mail receiving special handling shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence. The content of the mail shall not be read or skimmed. All physical contraband shall be confiscated prior to delivery to the prisoner. Mail opened in the prisoner's presence that clearly does not qualify for special handling or contains contraband shall be returned to the mailroom for processing in accordance with this policy.

KK.    A log shall be maintained to document the delivery of mail receiving special handling. The log shall include the date the mail was received in the mailroom, the sender's name, the prisoner's name and number, the date the mail was given to the prisoner, and the prisoner's signature acknowledging receipt of the mail. If the prisoner chooses not to sign or accept the mail, that shall be documented, and the mail delivered to the prisoner.

(Mail Policy, ECF No. 1, PageID.76.) Plaintiff contends that Defendants failed to process his legal mail as required by the policy.

Plaintiff reports that, on April 28, 2020, Defendants Scanlon and Brown processed an incoming piece of mail that was legal mail as regular mail. (Compl., ECF No. 1, PageID.8 ¶ 25.) Plaintiff received the mail opened, removed from its original envelope, and placed into a new envelope. Plaintiff reports that the mail was sent from this Court. Accepting that allegation as true, under the MDOC policy, it was legal mail. As noted above, mail from a court is considered legal mail.[4]

---

[4] The MDOC's inclusion of "mail from a court" in the definition of legal mail tracks the decisions of the Sixth Circuit Court of Appeals. *See, e.g.*, *Sallier v. Brooks*, 343 F.3d 868, 876–77 (6th Cir. 2003) (stating "prior decisions from our court have used the term 'legal mail' to include mail from the courts"). Not all federal courts consider mail from courts to be "legal mail," *see, e.g.*, *Martin v. Brewer*, 830 F.2d 76, 78–79 (7th Cir. 1987); *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998). Those courts reason that when a court mails publicly available documents to a prisoner, the "legal mail" protections are not implicated. *See Keenan*, 83 F.3d at (citing *Martin* for the proposition that "mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail" and noting that *Martin* relied on the fact that virtually all court mailings are public documents). The *Sallier* court acknowledged the public nature of most court mailings, but identified other court mailings that would not be public documents. *Sallier*, 343 F.3d at 876. To avoid chilling a prisoner's exercise of his First Amendment free speech rights and to protect a prisoner's access to the courts, the *Sallier* panel protected all court mailings even though many of those mailings would be publicly available. *Id*. at 877.

On May 28, 2020, Plaintiff was called to the unit control center to pick up and sign for another piece of legal mail from this Court. Plaintiff noticed that the adhesive on the left side flap of the envelope had been "activated and sealed" but was "at some point . . . torn open and taped close[d]." (*Id.*, PageID.10 ¶ 32.) Based on that fact, Plaintiff contends that the envelope was opened outside of his presence. Plaintiff posits that Scanlon or Brown opened Plaintiff's legal mail outside of his presence. (*Id.* ¶ 34.)

On August 12, 2020, Plaintiff again received mail from a court—this time the Michigan Court of Appeals—that had been processed as regular mail. (*Id.*, PageID.11–12 ¶¶ 39, 40.) The Michigan Court of Appeals was returning documents that Plaintiff had submitted for filing. Plaintiff attaches the envelope, which includes a note from the mailroom: "called Court of Appeals[;] Ms. Stockwell in clerk's office stated that they did not send any mail to this prisoner – not considered legal mail." (Attach., ECF No. 1, PageID.51; Compl., ECF No. 1, PageID.12 ¶ 41.) Plaintiff contends that Defendants Brown and Scanlon again violated Plaintiff's rights by opening his legal mail outside of his presence.

Plaintiff next claims that Defendant Delo, on September 29, 2020, opened and read a piece of legal mail that Plaintiff had attempted to send to attorney Wolfgang Mueller. (Compl., ECF No. 1, PageID.13 ¶ 47.) The mail was undeliverable as addressed and the forwarding order had expired, so it was returned to Plaintiff as the sender. A note on the envelope stated: "Opened by mistake contents not searched. J.D. 9/29/2020." (*Id.*, PageID.14 ¶ 47.)

On January 29, 2021, Plaintiff was again called to the unit control center to pick up and sign for his legal mail. (*Id.*, PageID.15 ¶ 55.) The mail was addressed to Plaintiff; it was from attorneys Jay Trucks & Associates. (*Id.*) A note on the envelope indicated that it had been opened by Defendant Brown; the note stated: "Opened in error. Contents not searched. K.B. 1/29/21" (*Id.*)

Although Scanlon, Brown, and Delo are the only persons who apparently opened the legal mail outside of Plaintiff's presence, Plaintiff suggests that several other Defendants are liable for that conduct. For example, with regard to the April 2020 legal mail, Plaintiff contends that Defendant Dixion-Ingalls is liable as a respondent to Plaintiff's grievance at the first step, (*id.*, PageID.9 ¶ 29), and Defendant Burton is liable as the respondent at the second step, (*id.*, PageID.10 ¶ 31). With regard to the May 2020 legal mail, Plaintiff contends that Defendant Dixion-Ingalls is liable as the supervisor of Defendants Scanlon and Brown, (*id.* ¶ 34; PageID.20 ¶ 72), and Defendant Burt is liable as the respondent to Plaintiff's grievance at the second step, (*id.*, PageID.11 ¶ 37). With regard to the September 2020 legal mail, Plaintiff contends that Defendant Brazee is liable as the investigator of Plaintiff's grievance at the first step, (*id.*, PageID.14 ¶ 49), Defendant Steward is liable as the person who signed off on the investigation report, (*id.*, PageID.15 ¶ 51), and Defendant Burt is liable as the respondent at the second step, (*id.* ¶ 53). With regard to the January 2021 legal mail, Plaintiff contends that Defendant Brazee is liable as the first step respondent to Plaintiff's grievance, (*id.*, PageID.16 ¶ 57), and Defendant Steward is liable as the second step respondent, (*id.* ¶ 59).

Plaintiff also contends that Defendants Washington and Burt are liable for the April and May legal mail issues because they failed to properly train their employees to handle legal mail. (*Id.*, PageID.17 ¶61.) Plaintiff claims that Defendant Barnes is also liable for rejecting Plaintiff's grievances regarding the failure of Defendants Washington and Burt to train their employees. (*Id.*, PageID.17–19 ¶¶ 62, 66, 69.) Plaintiff claims that Defendant Burt is also liable for serving as the second step respondent with regard to those grievances, (*id.*, PageID.18–19 ¶¶ 64, 67, 71) and for serving as the second step respondent with regard to Plaintiff's grievance against Defendant Dixion-Ingalls for failing to properly supervise Scanlon and Brown, (*id.*, PageID.20 ¶ 75). Because

Defendant Barnes rejected the Dixion-Ingalls grievance, Plaintiff contends that Barnes is liable as well. (*Id*. ¶ 73.)

Finally, Plaintiff claims that Defendant Barnes conspired with "senior prison administration officials" to retaliate against Plaintiff for filing the above-referenced grievances by rejecting the grievances. (*Id*., PageID.20–21 ¶ 77.) Plaintiff claims that Defendants Burt, Brazee, and Steward conspired with Defendant Barnes to retaliate against Plaintiff for filing the above-referenced grievances by approving Barnes's rejections of the grievances. (*Id*., PageID.21 ¶ 78.) Plaintiff also claims that Defendants Burt, Brazee, and Steward retaliated against Plaintiff for complaining about the legal mail issues by "refusing to reasonably respond" to those complaints. (*Id*. ¶¶ 79, 80.)

### B.   Access to the Courts

Plaintiff next complains that during the COVID-19 pandemic, beginning in mid-April 2020, prison administrators limited access to the law library. Prisoners were forced to make requests to have the prison library officials access the electronic law library (ELL) on behalf of prisoners. Plaintiff indicates that he submitted a request form and that Defendant Hardiman denied the request because Plaintiff did not have the funds to pay for the copies. (*Id*., PageID.28–29 ¶¶ 101–102.) Plaintiff contends that he was indigent and entitled to copies under the Prisoners' Access to the Courts policy directive, MDOC Policy Directive 05.03.116 (eff. Apr. 5, 2021), (ECF No. 1-1, PageID.104–107). Plaintiff also claims that "prison officials" used the COVID-19 restrictions and the new policy—a policy that required making significantly more copies—to raise money for the Prisoner Benefit Fund, which received the copy money paid. (Compl., ECF No. 1, PageID.29 ¶ 103.) Finally, Plaintiff claims the materials made available in the law library were "substandard and wholly useless . . . ." (*Id*., PageID.30–31 ¶ 107.) Plaintiff grieved Defendants Hardiman, Mercer, Burt, Brazee, and Steward regarding these issues.

Plaintiff seeks injunctive and declaratory relief (*Id.*, PageID.43 ¶¶156–157) as well as compensatory and punitive damages (*id.*, ¶ 158).

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that Defendants violated his First Amendment right to free speech, his First Amendment right to access the courts, his First Amendment right to be free from retaliation for engaging in conduct protected by the First Amendment, his Sixth Amendment right to receive his incoming legal mail, and his Fourteenth Amendment right to procedural due process.

### A. Censorship of Regular Mail

#### 1. First Amendment—Free Speech

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 501 U.S. 410, 427 (1993) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted)).

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822; *see also Turner v. Safley*, 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (*citing Pell*, 417 U.S. at 822–23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

13

*Turner* clarified that a prison regulation could permissibly impinge on an inmates constitutional rights "if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Court also identified factors that might be relevant in determining the reasonableness of a prison regulation:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Block v. Rutherford*, supra, 468 U.S., at 586. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression. *See Pell v. Procunier*, 417 U.S., at 828; *Bell v. Wolfish*, 441 U.S., at 551.
>
> A second factor . . . is whether there are alternative means of exercising the right that remain open to prison inmates. Where "other avenues" remain available for the exercise of the asserted right, see *Jones v. North Carolina Prisoners' Union, supra*, 433 U.S., at 131 courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Pell v. Procunier, supra*, 417 U.S., at 827.
>
> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order. When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. *Cf. Jones v. North Carolina Prisoners' Union, supra*, 433 U.S., at 132–133.
>
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *See Block v. Rutherford, supra* 468 U.S., at 587. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. *See ibid*. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner*, 482 U.S. at 89–91 (parallel cites omitted).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection.[5] *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).

### a.      Newspaper Articles

Confiscating a prisoner's mail is a far greater intrusion on his or her First Amendment free speech rights than is a simply inspecting that mail. According to Plaintiff, the news article confiscations here were premised on a determination that the articles constituted "mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." (Mail Policy, ECF No. 1, PageID.76.) In *Thornburgh*, the Supreme Court concluded that such a restriction was facially valid. *Thornburgh*, 490 U.S. at 416, 419. But that does not foreclose a determination that the policy was invalid as applied to these particular mailings. *Id*. at 419 (remanding "for an examination of the validity of the regulations as applied to any of the 46 publications introduced at trial"). The inquiry into whether or not the preservation of security, good order, or discipline justified the censorship of the newspaper articles is a fact-intensive exercise that necessarily requires straying beyond the bounds of Plaintiff's complaint. Accordingly, it is not an issue the Court can resolve on preliminary

---

[5] For the same reasons, a prison official's inspection of incoming mail does not violate the Fourth Amendment. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.") This Court has concluded that the reasoning in *Hudson* applies to a prisoner's incoming mail. *Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099, at *9 (W.D. Mich. Jul. 8, 2021).

screening. For that reason, the Court will not dismiss Plaintiff's First Amendment free speech claims relating to the Defendants' censorship of the newspaper articles. Plaintiff alleges that Defendant Brown censored the two articles; therefore, Plaintiff's First Amendment free speech claim against Defendant Brown for censoring the articles remains in the case.

### b.   DNA Report

Plaintiff claims that Defendants Brown and Scanlon confiscated some pages from the first mailing of the DNA report and the entirety of the second mailing of that report. Plaintiff's allegations indicate that Defendants Brown and Scanlon deny that any DNA report materials were confiscated. Accepting as true Plaintiff's allegations regarding confiscations of all or part of the DNA report, Plaintiff's First Amendment free speech claims against Brown and Scanlon cannot be dismissed on preliminary review.

### 2.   Fourteenth Amendment Due Process Claims

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff has a liberty interest in receiving his mail. *See Procunier*, 416 U.S. at 428, *overruled on other grounds by Thornburgh*, 490 U.S. at 401, ("The interests of prisoners and their correspondents in uncensored communications by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest . . . ."). Plaintiff focuses on the deprivation of his liberty interest when he presents his claim, (Compl., ECF No. 1, PageID.23–24); but the pages withheld from Plaintiff

were tangible personal property addressed to him. Thus, Plaintiff may have a property interest as well.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. With respect to incoming mail, the Supreme Court has held that the decision to censor incoming mail must be accompanied by "minimal procedural safeguards." *See Procunier*, 416 U.S. at 417–19. The Court described those safeguards as follows: "an inmate [must] be notified of the rejection of a letter written by or addressed to him, . . . the author of that letter [must] be given a reasonable opportunity to protest that decision, and . . . complaints [must] be referred to a prison official other than the person who originally disapproved the correspondence." *Id*. at 418–19

The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Here, Plaintiff alleges that he was deprived of the newspaper articles and the DNA report without receiving any of the minimal procedural safeguards. He specifically alleges that Defendants failed to follow the established state procedures. (Compl., ECF No. 1, PageID.23–24, 25 ¶¶ 86, 92.)

A due process claim for deprivation of Plaintiff's liberty or property interests in the newspaper articles and DNA report, however, would be barred by the doctrine of *Parratt v. Taylor*,

17

451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, have "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544.[6]

Where the state provides such a post-deprivation remedy, the plaintiff must plead and prove the inadequacy of the remedy. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (explaining that "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong"). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of liberty or property. *See Copeland*, 57 F.3d at 480. Plaintiff does not

---

[6] Although *Parratt* dealt specifically with the deprivation of a property interest, the Sixth Circuit has applied the doctrine to deprivations of liberty interests, *see, e.g.*, *Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (concluding that "[t]hough *Parratt v. Taylor* concerned the loss of property, we see nothing in its underlying rationale which would require a different treatment of due process claims for deprivation of liberty") (en banc), and specifically to a due process claim regarding deprivation of Plaintiff's liberty interest in his mail, *Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669, at *3 (6th Cir. Jul. 31, 2023).

allege any reason why a state-court action would not afford him complete relief for the deprivations he suffered, either negligent or intentional, of his liberty or property. Accordingly, Plaintiff's allegations that he was deprived of his liberty or property interests in the articles or DNA report without due process of law fails to state a claim upon which relief may be granted.

### 3. First Amendment—Retaliation[7]

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that "prison officials" did not have any problem with the content of Plaintiff's newspaper subscriptions until "August 7, 2020, when Plaintiff filed an administrative grievance against Warden Burt criticizing her botched handling of the COVID-19 outbreak at the facility, which lead to him contracting the deadly virus as a high risk recipient." (Compl., ECF No. 1, PageID.24.) Plaintiff contends that Defendant Brown conspired with Defendant Burt to

---

[7] Plaintiff's allegations regarding retaliation and mail censorship are limited to the newspaper articles. Plaintiff does not allege retaliation motivated the refusal to provide him part or all of the DNA Report. Plaintiff's specific retaliation claims are set forth in Count IV of the complaint. (Compl., ECF No. 1, PageID.37–40.) He alleges eight specific retaliation claims; two include Defendant Brown, none include Defendant Scanlon, and the DNA report is not mentioned. (*Id*.)

interfere with Plaintiff's receipt of his newspapers in retaliation for Plaintiff filing the grievance against Defendant Burt.

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Accepting Plaintiff's allegations as true, his August 7, 2020, grievance against Defendant Burt qualifies as protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). It is not at all clear that being deprived of a couple of newspaper articles is sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. Although the test is objective, it is very clear that it did not deter Plaintiff at all. He grieved the adverse action of which he complains. Nevertheless, for purposes of this preliminary analysis, the Court will proceed as if the denial of two newspaper articles rises to the level of adverse action.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.

1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he is able to identify a grievance he filed shortly before the newspaper article rejections that Defendant Brown's rejection must have been motivated by the grievance. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between

Defendant Brown's rejection of the articles and the grievance against Defendant Burt. Such allegations are insufficient to state a retaliation claim.

Indeed, Plaintiff fails to allege any facts to link Defendant Brown's action with the grievance against Defendant Burt. He does not allege any facts to show that Brown was aware of the grievance or that Burt was aware of the rejections. Instead Plaintiff alleges a legal conclusion: "Warden Burt conspired with subordinate Brown to retaliate against Plaintiff for exercising his free speech . . . ."[8] (Compl., ECF No. 1, PageID.24–25.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity,[9] as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact

---

[8] *See also* (Compl., ECF No. 1, PageID.39–40 ("Defendants Burt, Brazee, Barnes, Brown and Steward violated Plaintiff's First Amendment right to be free from retaliation of prison officials by conspiring together to retaliate against Plaintiff for exercising his First Amendment right to grieve/complaint . . . .").)

[9] It is ironic that Plaintiff alleges six times in his complaint that he has "pled [facts] with particularity as required by Rule 26(a)(1)." (Compl., ECF No. 1, PageID.10 ¶ 31, PageID.11 ¶ 38, PageID.15 ¶ 54, PageID.17 ¶ 60, PageID.22 ¶ 82, PageID.27–28 ¶ 99.) Of course those allegations are legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Here, Plaintiff alleges two layers of legal conclusions: that Defendants Brown and Burt were engaged in a conspiracy and that Plaintiff's allegations regarding the conspiracy are sufficiently particular. The Court is not required to—and does not—accept either legal conclusion as true.

that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that Burt and Brown shared a conspiratorial objective. Instead, Plaintiff appears to rely entirely on a highly attenuated inference that the two must have conspired from the mere fact that he has been subjected to objectionable treatment by Brown and his protected conduct was directed at Burt. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Plaintiff has not alleged any facts to support the inference that the censoring of the articles by Brown was related to the grievance against Burt, Plaintiff fails to state a plausible claim of conspiracy.

Without a possible claim of conspiracy, there is no connective tissue between Defendant Brown's alleged adverse action and Defendant Burt's supposed motive to retaliate for Plaintiff's grievance. All that remains is Plaintiff's allegations that the incidents occurred in the same calendar month. That temporal proximity is too slender a reed to support the weight of an inferred retaliatory motive. Plaintiff has failed to state a retaliation claim against Defendants Brown or Burt relating to the rejection of the newspaper articles. That claim will be dismissed.

### B.     Opening of Legal Mail

Plaintiff alleges five instances where he claims his legal mail was opened outside of his

presence:[10]

1.     On April 28, 2020, Defendants Scanlon and Brown processed Plaintiff's incoming legal mail—a document sent from this Court—as if it were regular mail. The envelope was opened and inspected. (Compl., ECF No. 1, PageID.8–9 ¶¶ 25–27.)

2.     On May 28, 2020, Plaintiff was called to the Control Center to pick up his legal mail—a document sent from the Court. The envelope had, apparently, been opened and resealed with tape. Plaintiff contends that Defendants Scanlon and Brown,[11] were responsible for opening the legal mail. (*Id.*, PageID.10–11 ¶¶ 32–34.)

3.     On August 12, 2020, Defendants Scanlon and Brown again processed Plaintiff's legal mail—correspondence and returned documents from the Michigan Court of Appeals—as if it were regular mail. (*Id.*, PageID.11–12 ¶¶ 39–41.)

4.     On September 29, 2020, Defendant Delo processed Plaintiff's legal mail—returned correspondence that Plaintiff had sent to attorney Wolfgang Mueller regarding potential representation in a proposed lawsuit against the MDOC—as regular mail. (*Id.*, PageID.13–14 ¶¶ 46–48.)

5.     On January 29, 2021, Defendant Brown processed Plaintiff's legal mail—correspondence from Jay Trucks & Associates, P.C.—as regular mail. (*Id.*, PageID.15–16 ¶ 55.)

In the same way that Plaintiff contends the censorship of his regular mail violated several

constitutional rights, he contends the opening of his legal mail outside of his presence also violated

---

[10] At first blush, mishandling legal mail on five separate occasions seems quite frequent. A review of Plaintiff's various cases in this Court, the United States District Court for the Eastern District of Michigan, and the Michigan appellate courts, however, reveals that Plaintiff has sent and received dozens and dozens of pieces of legal mail over the period covered by his complaint.

[11] Plaintiff included Defendant Dixion-Ingalls in his grievance regarding this incident. The rest of his allegations, however, make clear that Plaintiff identified Dixion-Ingalls as responsible due to that party's supervisory role or as a grievance responder, not because Dixion-Ingalls had actually opened the mail. (Compl., ECF No. 1, PageID.4 ¶ 7, PageID.9–10 ¶ 29, PageID.20 ¶ 72, PageID.21–22 ¶¶ 81–82, PageID.37 ¶ 132, PageID.39 ¶ 141, PageID.40–41 ¶ 146.)

several constitutional rights. Plaintiff contends that Defendants Brown, Delo, Dixion-Ingalls, and Scanlon violated Plaintiff's First Amendment right to receive mail by opening his legal mail outside of his presence. (Compl., ECF No. 1, PageID.33, 37 ¶¶ 115, 116, 131.) Plaintiff also contends that Defendants Brown and Delo interfered with Plaintiff's Sixth Amendment right to counsel when they opened Plaintiff's legal mail outside of his presence. (*Id.*, PageID.40 ¶ 145.) Further, Plaintiff contends that Defendants Brown, Delo, and Scanlon violated Plaintiff's Fourteenth Amendment right to due process by opening his legal mail when he was not present. (*Id.*, PageID.42 ¶ 152.)

### 1.    First Amendment Right to be Present for the Opening of Legal Mail

As noted above, the First Amendment guarantees a prisoner's right to receive mail. *See Pell*, 417 U.S. at 824. That right has not been impinged; Plaintiff acknowledges that he received his legal mail. But the Sixth Circuit has indicated that protection of the First Amendment right to receive mail requires that "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff*, 418 U.S. at 539). Plaintiff alleges that Brown, Scanlon, and Delo opened Plaintiff's legal mail outside of his presence. Accordingly, the Court concludes that Plaintiff's First Amendment "legal mail" claim against those three Defendants cannot be dismissed on preliminary review.

### 2.    Sixth Amendment Right to be Present for the Opening of Legal Mail

Plaintiff contends that the Sixth Amendment also guarantees his right to be present when legal mail is opened. But the Sixth Amendment protection does not extend to every mailing that falls within the definition of legal mail. In *Knop v. Johnson*, the Sixth Circuit noted that "the Sixth Amendment protects the attorney-client relationship from unwarranted intrusion," but only "[i]n criminal settings." *Knop*, 977 F.2d at 1012; *see also Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (citing *Knop* for the proposition that "the attorney-client relationship is shielded from

unwarranted intrusion *in criminal settings* by the Sixth Amendment") (emphasis added). In *Stanley v. Vining*, 602 F.3d 767 (6th Cir. 2010), the Sixth Circuit quoted *Wolff*, 418 U.S. at 576, for the following proposition: "As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting . . ." *Stanley*, 602 F.3d at 770.

The mailings from this Court and the Michigan Court of Appeals do not implicate Plaintiff's Sixth Amendment rights: they are not attorney-client communications. Plaintiff's mailing to Wolfgang Mueller related to a suit against the MDOC, not a criminal proceeding. Plaintiff does not provide information regarding the mailing from Jay Trucks & Associates, P.C., but Plaintiff does not allege that the mailing related to a criminal proceeding. Moreover, that firm does not practice in the area of criminal law. *See* https://www.jtrucks.com/practice-areas (last visited Aug. 17, 2024).

Put simply, Plaintiff has not alleged facts that support his claim that Defendants violated his Sixth Amendment rights when they opened Plaintiff's legal mail outside of his presence. That claim, therefore, is properly dismissed.

### 3. Fourteenth Amendment Due Process Right to be Present When Legal Mail is Opened

As Plaintiff is aware from his prior lawsuits, even if a prisoner is deprived of a liberty interest[12] when his legal mail was opened outside of his presence, he has not alleged that he did not have an adequate post-deprivation remedy. *Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669, at *3 (6th Cir. Jul. 31, 2023). As explained in section II.A.2. above, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *See Copeland*, 57 F.3d at 479 (6th Cir. 1995).

---

[12] Plaintiff received his legal mail; therefore, it cannot be said that he was deprived of a property interest.

26

Moreover, state post-deprivation remedies were available to him. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of liberty or property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations he suffered, either negligent or intentional, of his liberty interest. Accordingly, Plaintiff's allegations that he was deprived of his liberty interest without due process of law fails to state a claim upon which relief may be granted.

### C.    Denial of Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop*, 977 F.2d at 1009.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack

of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual

injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover,

the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord*

*Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include

requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . .

is an element that must be described in the complaint, just as much as allegations must describe

the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)

(citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to

give fair notice to a defendant." *Id.* at 415.

Plaintiff offers two distinct denial-of-access-to-the-courts claims. First, Plaintiff claims:

(a) that Defendants Hardiman and Mercer refused to provide Plaintiff with free copies of legal

materials or an adequate law library, (Compl., ECF No. 1, PageID.35 ¶ 123); (b) Defendant Mercer

prevented Plaintiff from filing a "nonfrivolous" response to the court that resulted in the dismissal

of Plaintiff's civil rights claims, (*id.*, ¶ 124); and (c) Defendants Burt, Brazee, and Steward, by

28

implicitly approving of the COVID-19 law library restrictions that Hardiman and Mercer enforced, also denied Plaintiff access to the courts, (*id.*, PageID.35–36 ¶ 126).

With regard to this claim, Plaintiff identifies the underlying cause of action in which he purportedly lost a remedy: *Calhoun v. Cnty. of Berrien*, No. 1:20-cv-1076 (W.D. Mich.). Plaintiff alleges that because he failed to respond to this Court, his civil rights complaint was dismissed. (Compl., ECF No. 1, PageID.31–32 ¶ 110.) Although the Court must accept Plaintiff's well-pleaded factual allegations as true, the Court is not required to accept as true factual allegations that are contradicted by public records. *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (stating that, in the context of considering a motion to dismiss, "this court may take judicial notice of public records, and we are not required to accept as true factual allegations that are contradicted by those records"). The records of this Court in Plaintiff's "lost remedy" case undercut Plaintiff's allegations.

Plaintiff's allegation that his civil rights case was dismissed because of his failure to respond is patently false. Plaintiff's complaint was dismissed because it was frivolous. J., *Calhoun v. Cnty. of Berrien*, No. 1:20-cv-1076 (W.D. Mich. March 31, 2021) (dismissing Plaintiff's action with prejudice as frivolous). Moreover, the Court's determination that Plaintiff's action was frivolous forecloses relief on his access to the courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."); *Hadix*, 182 F.3d at 405 (noting that "only prisoners with non-frivolous underlying claims can have standing to litigate an

29

access-to-courts action"). Accordingly, Plaintiff has failed to state an access-to-the-courts claim against Defendants Hardiman, Mercer, Burt, Brazee, or Steward.

Plaintiff's second denial-of-access-to-the-courts claim is raised against Defendants Scanlon and Brown. Plaintiff contends that those Defendants' confiscation of some of the first DNA report and all of the second report denied him access to the courts. Plaintiff describes the report as a "forensic DNA analysis [that was] to be presented as newly discovered exculpatory evidence to the court in Plaintiff's post-conviction appeal with respect to his criminal conviction." (Compl., ECF No. 1, PageID.25 ¶ 91.) Plaintiff alleges no facts that support an inference that the DNA report constitutes newly discovered evidence nor does Plaintiff allege facts that would support an inference that the report somehow exculpated him. To put the issue in some context, the Michigan Court of Appeals described the facts underlying Plaintiff's conviction as follows:

> Following a jury trial, defendant was convicted of first-degree criminal sexual conduct, M.C.L. § 750.520b(1)(b), for engaging in sexual intercourse with his fourteen-year-old stepdaughter. He appeals as of right. We affirm.
>
> The victim testified that defendant began engaging in sexual touching and other sexual acts with her when she was in the second grade and living with her mother and defendant in Chicago. When the victim was in the sixth or seventh grade, defendant started having penile/vaginal intercourse with her. In May 2000, when the victim and her family were living with defendant in Niles, Michigan, the victim became pregnant. She testified that she never engaged in sexual intercourse with anyone else and that defendant impregnated her. In October 2000, the victim moved to a pregnancy home in Indiana. Shortly before the baby's birth, the victim informed her mother that defendant was responsible for the pregnancy. Before that time, she had maintained that another person was responsible, because defendant had instructed her to do so. The police were notified about defendant's actions shortly before the baby was delivered on February 12, 2001.
>
> When the baby was born, fetal blood was drawn and given to a detective from the Niles Police Department. Similarly, the victim's blood was drawn and given to the detective. The detective packaged the blood and sent it to the state police laboratory for DNA analysis. Defendant was later arrested and his blood was drawn pursuant to a search warrant. It was also sent for DNA analysis. DNA analysis revealed that the odds in favor of defendant being the father of the baby were 3,035,319,000 to 1. The percentage of the population that was excluded from paternity was 99.99997 percent.

Defendant defended the charge by testifying that he never engaged in sexual intercourse with the victim. He further indicated that he previously injured a testicle on a bicycle. While he admitted that he had a low sperm count, he claimed that he could not father children at all. He denied that the victim's eleven-year-old brother was his child. He also offered testimony that the victim's allegations were prompted by the victim's mother as part of a plot to obtain his property. The jury convicted defendant as charged.

*People v. Calhoun*, No. 237287, 2003 WL 2239903, at *1 (Mich. Ct. App. Oct. 21, 2003).

Considered against the DNA evidence and victim testimony, Plaintiff's claim that the DNA report was exculpatory is not a statement of fact, it is a legal conclusion. The Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *Steele v. Jenkins*, No. 17-4171, 2018 WL 2144073, at *3 (6th Cir. Mar. 5, 2018) (noting that the petitioner's "assertion that the data is exculpatory is speculative and conclusory, and it does not overcome the overwhelming evidence presented at trial establishing [his] guilt"). Plaintiff offers no facts to support the legal conclusion that the report exculpated him. He fails to explain how, two decades after his trial, a report generally available to all online, apparently without the benefit of any actual forensic testing, would persuasively overcome the compelling DNA evidence offered at his trial.

As noted above, Plaintiff must allege actual injury, "that he suffered some actual prejudice in prosecuting litigation," *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003), to have standing to pursue an access to the courts claim. A plaintiff must allege "specific facts showing that he suffered prejudice." *Id*. A "claim of actual prejudice . . . [that] is entirely conclusory" will

31

not suffice. *Id*.; *see also Diehl v. Hunter*, No. 12-11522, 2013 WL 2480688, at *6 (E.D. Mich. June 10, 2013) (stating that "conclusory, speculative assertions of prejudice are insufficient to state a claim for denial of access to the courts"); *Kensu*, 87 F.3d at 175 (rejecting plaintiff's claim that he was denied access to the courts and stating "While he further argues in a conclusory manner that the tape was highly exculpatory and valuable for his appeal, he has offered no specific facts or evidence to support his contention. Therefore, he has not shown that he was prejudiced when the defendants refused to allow him to receive this tape."). Plaintiff's allegations regarding actual injury flowing from his failure to receive the entire report are entirely conclusory and, thus, are insufficient to support his claim. Accordingly, the Court will dismiss Plaintiff's access-to-the-courts claim against Defendants Scanlon and Brown for failure to state a claim.

### D.     Indirect Liability

Defendants Scanlon, Brown, and/or Delo were directly involved in the actions that may give rise to First Amendment violations for censoring Plaintiff's mail or for opening Plaintiff's legal mail outside of his presence. Those are the only claims that remain. Plaintiff contends that one or more of the other Defendants (Washington, Burt, Steward, Brazee, Dixion-Ingalls, or Barnes) might also be liable for the misdeeds of Scanlon, Brown, and Delo. Those contentions are discussed below.

#### 1.     Defendant Washington

Plaintiff alleges that Defendant Washington is responsible for the overall operations of the MDOC, creating policies and operating procedures for all state correctional facilities. (Compl., ECF No. 1, PageID.3 ¶ 3.) Plaintiff raises three specific claims against Defendant Washington:

1.     Defendant Washington violated Plaintiff's First Amendment rights to be free from capricious interferences with his incoming mail based upon a prison official's personal prejudices by implicitly approving the unconstitutional conduct of her subordinates via her inactions to rectify the unconstitutional practices of mail room officials at MCF after being

informed about the issues in Plain[ti]ff's numerous grievances to her office, contrary to both clearly established law and the MDOC, Handbook Department Work Rules #27. (Compl., ECF No. 1, PageID.34 ¶ 120.)

2.     Defendant Washington violated Plaintiff's Sixth Amendment rights to be free from arbitrary and capricious searches of his incoming mail without justification by implicitly approving the unconstitutional conduct of her subordinates as is evidenced by her inactions to rectify the active constitutional violations complained about in Plaintiff's numerous grievances to her office, contrary to both clearly established law and the MOOC, Handbook Department Rule #27. (*Id*., PageID.41 ¶ 147.)

3.     Defendant Washington violated Plaintiff's Fourteenth Amendment right to procedural due process by depriving Plaintiff of the safeguard of his constitutional protections regarding his incoming legal mail when she implicitly authorized the unconstitutional conduct of her subordinates by her inactions after being made aware of their conduct via grievances filed by Plaintiff, where he has a protected liberty interest in communicating by mail, contrary to the MDOC, Handbook Directive Rule #27. (Id., PageID.42–43 ¶ 155.)

Essentially, Plaintiff contends that Defendant Washington is liable for "the unconstitutional conduct of her subordinates" because she failed to fix the problems in response to Plaintiff's grievances regarding that conduct.[13]

Plaintiff seeks to hold Defendant Washington liable due to her supervisory position. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't*

---

[13] Plaintiff also alleges that he attempted to file grievances against Defendants Washington and Burt "for dereliction of their duties by failing to properly train their employees assigned to work in the mail room as clerks to follow established mail handling regulations concerning prisoners['] legal mail." (Compl., ECF No. 1, PageID.17, 18 ¶¶ 61, 65.) Those grievances were rejected and the rejections upheld. Plaintiff does not specifically allege that Defendant Washington failed to train the mail room clerks. He does allege that Defendants Burt, Brazee, and Steward failed to properly train their employees to handle prisoners' legal mail. (*Id*., PageID.34 ¶ 119.) Absent a specific "failure to train" allegation against Defendant Washington, the Court concludes that Plaintiff has failed to state such a claim against her. Moreover, even if Plaintiff had included Defendant Washington in the list with Burt, Brazee, and Steward as failed trainers, for the reasons set forth below, he has failed to state a claim against any defendant for failure to train.

*of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A

claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v.

Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.

2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon

the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368

F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a

supervisor denied an administrative grievance or failed to act based upon information contained in

a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the

minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee*,
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland*, 57 F.3d at 481; *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir.

1993).

Here, Plaintiff seeks to impose liability on Defendant Washington either because she was

in charge of the entire MDOC or because she failed to respond to Plaintiff's grievances. Neither

Washington's position nor her failure to respond to grievances[14] would be enough to impose

---

[14] Moreover, Plaintiff never alleges that he sent any grievances or complaints to Defendant
Washington. Plaintiff provides factual allegations regarding many grievances that he filed or
attempted to file. At no time does he allege that a grievance made it into Defendant Washington's
hands.

liability. Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Because Plaintiff has failed to allege sufficient facts to show that Defendant Washington engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against her.

### 2. Defendants Burt, Brazee, and Steward

With limited exceptions, Plaintiff alleges that Defendants Burt, Brazee, and Steward participated together in wrongful conduct:

> 1. Defendants Burt, Brazee and Steward violated Plaintiff's First Amendment rights to be free from capricious interferences with his incoming mail based upon a prison official's personal prejudices by knowingly acquiescing to the unconstitutional conduct of their subordinates before and after the fact, contrary to prison policy. (Compl., ECF No. 1, PageID.34 ¶ 118.)

> 2. Defendants Burt, Brazee and Steward violated Plaintiff's First Amendment rights to be free from capricious interferences with his incoming mail based upon a prison official's personal prejudices by failing to properly train their employees assigned to work in the prison mail room in established mail handling regulations concerning prisoners legal mail, contrary to both clearly established law and prison policy. (*Id*. ¶ 118.)

> 3. Defendants Burt, Brazee and Steward violated Plaintiff's First Amendment right to access to the court by their implicit approval of the enactment of the "new rule" under the guise of COVID restrictions that discriminated against Plaintiff as an indigent prisoner, thus impeding Plaintiff's right to access to the court, contrary to both clearly established law and prison policy. (*Id*., PageID.35–36 ¶ 126.)

> 4. Defendants Burt, Brazee, Dixion-Ingalls and Steward violated Plaintiff's First Amendment right to the freedom of speech . . . with deliberate indifference, they acquiesced to the unconstitutional conduct of Brown, Delo and Scanlon via their adamant refusal to rectify this issue in the numerous complaints filed against them in Plaintiff's grievances as is evidenced by their inactions, contrary to prison policy. (*Id*., PageID.37 ¶ 132.)

5.      Defendants Burt, Brazee, and Steward violated Plaintiff's First Amendment right to be free from the retaliation of prison officials by conspiring with Barnes to reject Plaintiff's grievances against them in order to deter Plaintiff from continuing to engage in such conduct, contrary to both clearly established law and prison policy. (*Id*., PageID.38 ¶ 136.)

6.      Defendants Burt, Brazee and Steward violated Plaintiff's First Amendment right to be free from the retaliation of prison officials by their complicity and acquiescence in the unconstitutional conduct of their subordinate Brown, with respect to her rejection/censorship of articles in Plaintiff's subscription newspaper that pertained to the COVID-19 pandemic in order to stifle Plaintiff's freedom of expression via the grievance process, contrary to both clearly established law and prison policy. (*Id*., PageID.38–39 ¶ 138.)

7.      Defendants Burt, Brazee and Steward violated Plaintiff's First Amendment right to be free from the retaliation of prison officials by conspiring together to acquiesce in the unconstitutional conduct of both Barnes and Brown due to the numerous grievances Plaintiff filed against senior prison administration officials, contrary to both clearly established law and prison policy. (*Id*., PageID.39 ¶ 139.)

8.      Defendants Burt, Brazee and Steward violated Plaintiff's First Amendment right to be free from the retaliation of prison officials by conspiring together to clear Brown, Delo and Scanlon of any wrongdoing with respect to their interference with Plaintiff's incoming mail due to the numerous grievances that he filed with regard to the issue, which exposed the administration's active constitutional violations that persist, contrary to both clearly established law and prison policy. (*Id*., PageID.39 ¶ 140.)

9.      Defendants Burt, Brazee, Dixion-Ingalls and Steward violated Plaintiff's First Amendment right to be free from the retaliation of prison officials by failing to reasonably respond to the repeated abuses of Plaintiff's constitutional rights at the hands of Brown and Scanlon with impunity; but instead, they allowed their subordinates to continue as usual with the practice of opening prisoners properly marked incoming legal mail outside of their presence and without justification, contrary to both clearly established law and prison policy. (*Id*., PageID.39 ¶ 141.)

10.     Defendants Burt, Brazee, Barnes, Brown and Steward violated Plaintiff's First Amendment right to be free from the retaliation of prison officials by conspiring together to retaliate against Plaintiff for exercising his First Amendment right to grieve/complaint,

contrary to both clearly established law and prison policy. (*Id.*, PageID.39–40 ¶ 142.)

11.    Defendants Burt, Brazee, Dixion-Ingalls and Steward violated Plaintiff's Sixth Amendment right to be free from arbitrary and capricious searches of his incoming mail without justification by implicitly authorizing such unfettered searches by prison mail room officials when they failed to reasonably respond to Plaintiff's complaints regarding Brown and Delo and to deter the unconstitutional conduct of their subordinates, contrary to both clearly established law and prison policy. (*Id.*, PageID.40–41 ¶ 146.)

12.    Defendants Burt, Brazee and Steward violated Plaintiff' Fourteenth Amendment right to procedural due process by depriving Plaintiff of the right to have his properly marked incoming legal mail opened only in his presence by their acquiescence to the unconstitutional conduct of their subordinates, where Plaintiff has a liberty interest in communicating by mail, contrary to prison policy. (*Id.*, PageID.42 ¶ 154.)

Once again, Plaintiff relies on the supervisory roles of Burt, Brazee, and Steward, or their responses to grievances, to hold them responsible for the unconstitutional actions of Scanlon, Brown, and Delo. For the reasons set forth above with regard to Defendant Washington, however, that is not active unconstitutional conduct. For that reason, Plaintiff has failed to state a claim against these Defendants based on their superior positions to Scanlon, Brown, or Delo, or their responses or failure to respond to Plaintiff's grievances and complaints.

Plaintiff also raises some new theories of liability with regard to Burt, Brazee, and Steward. For example, Plaintiff claims that these Defendants are liable because they failed to train Scanlon, Brown, and Delo. (Compl., ECF No. 1, PageID.8 ¶ 24, PageID.34 ¶ 119.) Plaintiff's conclusory statements that these three Defendants failed to train Scanlon, Brown, or Delo are not supported by allegations of fact.[15] This Court has determined that similarly conclusory failure-to-train

---

[15] Indeed, as noted above, the records of this Court, the United States District Court for the Eastern District of Michigan, and the Michigan appellate courts reveal that Plaintiff received literally dozens and dozens of legal mailings over the period covered by Plaintiff's complaint. Plaintiff complains about only five instances where the mailroom personnel failed to follow MDOC legal

allegations fails to state a claim. *See, e.g. Price v. Mich. Dep't of Corr.*, No. 1:23-cv-430, 2023 WL 3493201, at *5 (W.D. Mich. May 17, 2023) (dismissing failure-to-train claim where "Plaintiff fail[ed] to allege even any fact that would support his conclusory claim"); *Robinson v. Washington*, No. 2:21-cv-63, 2022 WL 620717, at *4 (W.D. Mich. Mar. 3, 2022) (stating that plaintiff's "vague and conclusory allegations of supervisory responsibility or a general failure to train are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's assault [and c]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983"). Moreover, the Sixth Circuit has made clear that "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cnty. Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). There are no factual allegations that reveal that level of involvement on the part of any of the supervisory defendants here. Therefore, Plaintiff has failed to state a "failure to train" claim against these (or any) Defendants.

Several of Plaintiff's theories of liability are premised on Burt, Brazee, and Steward retaliating against Plaintiff for his participation in protected conduct. (Compl., ECF No. 1, PageID.20–22, 38–40 ¶¶ 77–81, 136, 138–142.) The crux of Plaintiff's retaliation claims is that in response to Plaintiff's filing of grievances, these Defendants, in conspiracy with Defendant Barnes, rejected grievances and individually denied grievances. To state such a claim, Plaintiff must allege that he engaged in protected conduct and that Defendants acted adversely to Plaintiff because Plaintiff engaged in protected conduct. *Thaddeus-X*, 175 at 394. Filing a grievance is "protected

---

mail policy. Thus, the mailroom personnel must have had some understanding regarding the proper handling of legal mail.

conduct." *Smith*, 250 F.3d at 103; *Herron*, 203 F.3d at 415. But Plaintiff has failed to allege "adverse action" by a prison official that is sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. Plaintiff contends that Defendants' adverse action was the rejection or denial of his mail-related grievances. There is nothing inherent in the Defendants' rejections or denials of Plaintiff's grievances to suggest that they would deter an ordinary person from again filing a grievance. Those actions certainly did not deter Plaintiff; his allegations show that he has relentlessly pursued the grievance remedy before and after the denials and rejections.

Indeed, if denying a grievance were considered adverse action, every denial would give rise to liability for First Amendment retaliation. But the Sixth Circuit has foreclosed such an absurd result, stating that the denial of administrative grievances does not give rise to liability under § 1983. *Grinter*, 532 F.3d at 576. Many courts, including this one, have specifically held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Colvin v. Horton*, No. 2:19-cv-122, 2019 WL 3927425, at *12 (W.D. Mich. Aug. 20, 2019) *aff'd* No. 19-2067 (6th Cir. Apr. 27, 2020) (collecting cases). Denying or rejecting a grievance could not deter a person of ordinary firmness from engaging in protected conduct. Therefore, Plaintiff fails to state a claim against these Defendants for First Amendment retaliation.

Plaintiff also attempts to link these Defendants with Defendant Barnes—who rejected several of Plaintiff's grievances—by way of a conclusory statement that they all engaged in a conspiracy. As explained above, to prevail on such a claim, Plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy

caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi*, 658 F.3d at 602. Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger*, 524 F.3d at 776; *Spadafore*, 330 F.3d at 854; *Gutierrez*, 826 F.2d at 1538.

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that these Defendants and Barnes shared a conspiratorial objective. Therefore, Plaintiff has failed to state a conspiracy claim.

Plaintiff repeatedly states that the actions of these Defendants, specifically with respect to their handling of his grievances, are contrary to prison policy. To the extent Plaintiff invokes prison policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal claim.

Additionally, mishandling or interfering with an administrative grievance is not active unconstitutional behavior. First, interference with the grievance remedy does not violate due process because Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, actions (or inactions) of these Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Furthermore, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were

improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Finally, Plaintiff's claims against these Defendants for violations of his Sixth and Fourteenth Amendment rights fail for the same reasons that his claims against Scanlon, Brown, and Delo fail. Plaintiff has not identified a criminal proceeding involving Wolfgang Mueller or the Trucks firm that might give rise to Sixth Amendment liability and Plaintiff has not alleged the inadequacy of state post-deprivation remedies to provide the foundation for a Fourteenth Amendment due process claim.

For all of these reasons, Plaintiff has failed to state a claim against Defendants Burt, Brazee, and Steward.

### 3.      Defendant Barnes

Plaintiff alleges that Defendant Barnes improperly rejected grievances that Plaintiff filed against Defendants Washington and Burt, Defendants Burt and Brazee, and Defendant Dixion-Ingalls. (Compl., ECF No. 1, PageID.17–21, 38–39 ¶¶ 62–77, 135–136.) For all of the reasons set forth above with regard to Defendants Burt, Brazee, and Steward, Plaintiff's allegations regarding Defendant Barnes's rejection of Plaintiff's grievances fail to state a claim upon which relief may be granted.

### 4.      Defendant Dixion-Ingalls

Plaintiff's allegations against Defendant Dixion-Ingalls depend on her role as a supervisor and her role in responding to Plaintiff's grievances. *See supra* note11. For all of the reasons set

forth above with regard to Defendants Washington, Burt, Brazee, and Steward, Plaintiff's allegations against Defendant Dixion-Ingalls fail to state a claim upon which relief may be granted.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Washington, Burt, Steward, Brazee, Dixion-Ingalls, Hardiman, Barnes, and Mercer will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Scanlon, Brown, and Delo:

> Plaintiff's claims for conspiracy to violate the First Amendment (Compl., ECF No. 1, PageID.33 ¶ 115, PageID39–40 ¶ 142.)

> Plaintiff's First Amendment claim for denial of access to the courts. (*Id.*, PageID.35 ¶ 125.)

> Plaintiff's First Amendment retaliation claim against Defendant Brown. (*Id.*, PageID.38 ¶ 137.)

> Plaintiff's Sixth Amendment claim. (*Id.*, PageID.40 ¶ 145.)

> Plaintiff's Fourteenth Amendment due process claims. (*Id.*, PageID.41–42 ¶¶ 150–152.)

The following claims against Defendants Scanlon, Brown, and Delo remain in the case:

> Plaintiff's claims for violations of his First Amendment right to receive regular mail. (*Id.*, PageID.33 ¶ 117, PageID.36, ¶ 129–130.)

> Plaintiff's claims for violations of his First Amendment right to be present when his legal mail is opened for inspection. (*Id.*, PageID.33 ¶ 116, PageID.37 ¶ 131.)

 An order consistent with this opinion will be entered.


Dated:   August 23, 2024                     /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge